CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

EVAN M. MATEER (CABN 326848)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    Evan.mateer@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 4:23-cr-00237-HSG-1 |
| Plaintiff, | ) | **US SENTENCING MEMORANDUM** |
| v. | ) | Hearing Date: June 24, 2026 |
| | ) | Hearing Time: 2 pm |
| DEVAUGHN SARMIENTO, | ) | Courtroom:    Courtroom 2 |
| Defendant. | ) | Hon.  Haywood S. Gilliam, Jr. |
| | ) | |

## I.    INTRODUCTION

From May through November 2022, Devaughn Sarmiento and his co-conspirators planned and executed at least two dozen armed convenience store robberies in San Lorenzo, San Leandro, Oakland, Alameda, Hayward, and Berkeley. Their aim in each case was to steal cigarettes to sell. The robberies were carefully planned and choreographed, with each robbery executed in the space of a few minutes and the inside perpetrators immediately fleeing into an awaiting car. In most cases, victim clerks were threatened through the display of either a firearm or a BB gun; in the incident or two where a clerk did not see a physical weapon, one co-defendant gestured to indicate a weapon. One clerk was explicitly told they would be shot if they did not empty the register; another was told not to "be stupid." That same co-defendant pointed his weapon at one clerk who did not cooperate immediately.

These were serious offenses. Thankfully, since his arrest, Mr. Sarmiento has taken responsibility for his crimes and made substantial efforts to turn his life around. Most notably, Mr. Sarmiento has participated in the CAP program for the last year. Mr. Sarmiento has now completed that program, and has significantly rehabilitated himself in doing so. In recognition of the changes Mr. Sarmiento has made since he committed the instant offenses nearly four years ago, the government recommends a that the Court sentence Mr. Sarmiento to five years of probation.

## II.    OFFENSE CONDUCT AND BACKGROUND

From May 6, 2022, to November 17, 2022, the defendants planned and executed at least two dozen robberies of local convenience stores including in San Leandro, Berkeley, Hayward, Oakland, and San Lorenzo, all in the Northern District of California. PSR ⁋ 10. On the day of a robbery, Devaughn Sarmiento would arrive at the target convenience store with either or both Lorenzo Sarmiento and Mr. Simon. *Id.* At the time of the robbery, the defendants would enter the target convenience store together and upon entering, Devaughn Sarmiento would approach an employee or employees and would either brandish what appeared to be a firearm at his belt, or gesture to his belt indicating the presence of a firearm, in order to control the employee or employees. *Id.* Devaughn Sarmiento would demand the money from the register and while he was controlling the store employee, Lorenzo Sarmiento and Simon would go around the counter and load bags with cigarettes. *Id.* The defendants would then flee and enter an awaiting car driven by others known and unknown. *Id.*

*May 13, 2022, Robbery (Count Two)*

On May 13, 2022, at approximately 9:51 p.m., Devaughn Sarmiento, Lorenzo Sarmiento, and Simon entered the Rite Aid at 1355 MacArthur Boulevard in San Leandro. PSR ⁋ 11. Devaughn Sarmiento brandished what appeared to be a firearm to an employee and said to the clerk, "Empty the cash register or I'll shoot you." *Id.* While Devaughn Sarmiento was controlling the employee, Lorenzo Sarmiento and Simon jumped together behind the counter and collectively put packages of cigarettes worth $3,000 into duffle bags. *Id.* The employee opened the register, and Lorenzo Sarmiento pushed the employee out of the way and took money from the register, specifically $1,276. *Id.* The group then fled to an awaiting vehicle outside the store. *Id.*

*August 18, 2022, Robbery (Count Five)*

On August 18, 2022, at approximately 1:10 a.m., Devaughn Sarmiento and Lorenzo Sarmiento entered the ARCO gas station located at 712 Lewelling Boulevard in San Leandro.  PSR ¶ 12. Devaughn Sarmiento approached the cashier, lifted his shirt to reveal a black handgun tucked in his waistband, and told the victim "Don't be stupid, give me all the money." *Id.*  The victim told the suspects they could take whatever they wanted, and asked that they not hurt her (victim). Devaughn Sarmiento put his shirt down as Lorenzo Sarmiento walked behind the cash register and began loading a backpack with cigarettes. Devaughn Sarmiento ordered the victim to open the cash registers as she began to take out all of the money inside of the first register which totaled $300. However, out of fear, the victim was unable to open the second cash register. Once Lorenzo Sarmiento finished filling his bag with approximately $1,065 worth of cigarettes, the two fled on foot.

On November 17, 2022, following a robbery in San Lorenzo, police attempted a traffic stop on the suspects' vehicle which was a black Nissan registered to Patricia Sarmiento. The pursuit continued into Oakland where the deputies located the vehicle and arrested Patricia Sarmiento and Ray'Mon Simon. Police searched the vehicle and located masks, hoodies, duffel bags filled with cigarettes, and gloves that were used by the suspects in the robberies. Simon and Patricia Sarmiento were released from custody on November 29, 2022.

On January 10, 2023, the Hayward Police Department, San Leandro Police Department, and Alameda County Sheriff's Office executed search and arrest warrants for the suspects. Multiple items of clothing visible in surveillance footage from the robberies were seized, as were two firearms. One black 9 mm Glock was located at Simon's residence. Additionally, the other of those firearms, a silver Taurus .40, was located in a Toyota Corolla that Lorenzo and Devaughn were riding in. At the time the car was pulled over, Lorenzo and his partner's two-year old child was sitting in the rear seat of the Corolla with Devaughn. Investigators determined the loaded firearm was sitting in a fanny pack next to the unsecured car seat in which the child was seated. Based on Devaughn's seated position inside of the vehicle, coupled with the indicia tying him to the fanny pack, and along with investigators determining the child was in close enough proximity to the pistol to access it, Alameda County separately charged Devaughn with child endangerment related charges. These charges have since been dismissed.

The total loss of Mr. Sarmiento's robberies totaled $2,971.

## III.   THE SENTENCING GUIDELINES CALCULATION

The PSR, which follows the Plea Agreement and with which the government agrees, calculates the offense level as follows:

Group 1 (Robbery Affecting Interstate Commerce – Count 2):

| | | |
|---|---|---:|
| a. | Base Offense Level, U.S.S.G. § 2B3.1(a): | 20 |
| b. | Specific offense characteristics under U.S.S.G. Ch. 2 Dangerous weapon brandished or possessed, U.S.S.G. § 2B3.1(b)(2)(E) | + 3 |
| c. | Adjusted offense level (Group 1) | 23 |

Group 2 (Robbery Affecting Interstate Commerce – Count 5):

| | | |
|---|---|---:|
| d. | Base Offense Level, U.S.S.G. § 2B3.1(a): | 20 |
| e. | Specific offense characteristics under U.S.S.G. Ch. 2 Dangerous weapon brandished or possessed, U.S.S.G. § 2B3.1(b)(2)(E) | + 3 |
| f. | Adjusted offense level (Group 2) | 23 |

Combined Offense Level:

| | | |
|---|---|---:|
| w. | Combined Offense Level, § 3D1.4 § 3D1.4(a) | + 2 |
| x. | Acceptance of Responsibility: If I meet the requirements of U.S.S.G. § 3E1.1, I may be entitled to a three-level reduction for acceptance of responsibility, provided that I forthrightly admit my guilt, cooperate with the Court and the Probation Office in any presentence investigation ordered by the Court, and continue to manifest an acceptance of responsibility through and including the time of sentencing. | - 3 |
| y. | Combined Adjusted Offense Level: | 22 |

PSR ¶ 19-40.  The government also agrees with the PSR's determination that the defendant has a criminal history score of 0 and a Criminal History Category (CHC) of I.  PSR ¶ 90.  The applicable sentencing range is 41 to 51 months in prison.  *Id.* at ¶ 115.

## IV.   LEGAL STANDARD

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2).  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. Id. After determining the

appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

(5) the need to provide restitution to any victims of the offense.

**V.    SENTENCING RECOMMENDATION**

The government recommends a sentence of five years' probation. Mr. Sarmiento's conduct was extraordinarily serious. Not only did it involve financial loss, it carried with it the risk of death—not once but repeatedly. And without doubt that it caused substantial trauma to the victims of the robberies, who had to face the fear of being harmed or killed. Ordinarily, an offense this grave would warrant a custodial sentence. But other important factors in Mr. Sarmiento's history—including his youth and drug addiction at the time he committed the offense—tend to mitigate his conduct. And even more critically, Mr. Sarmiento has made significant efforts at rehabilitation that the government believes have drastically reduced the danger that he poses to the community.

Mr. Sarmiento's participation in CAP has been commendable. He completed the program with only one minor violation (a diluted urine sample). But more than his record, Mr. Sarmiento's participation in CAP sessions has shown a strong commitment to sobriety, a deep reflection on the choices he had made that caused him to commit the instant offenses, and acceptance of new responsibilities, not least caring for his young child. In addition to the basic requirements of CAP, Mr. Sarmiento also took part in a restorative justice program, which required him to hear from real victims of crime, and to reflect on the harm that his crimes had done to others. It was clear that Mr. Sarmiento

US SENTENCING MEMO – SIMON                    5
4:23-cr-00237-HSG-1

was moved by his participation in this program, and the government believes that his reflection will serve as a strong deterrent to his committing new crimes in the future. The government also believes that Sarmiento's conduct had been substantially driven by his drug addiction, and that his sobriety— achieved and maintained through hard work and dedication—also significantly reduce the chance that he will reoffend.

. However, in acknowledgment of the seriousness of this offense, the government joins in Probation's recommendation that the term of probation be 5 years. A five-year term of probation will force Mr. Sarmiento to extend his positive record well into the future. Until then, to have probation— and possible revocation—hanging over Mr. Sarmiento will incentivize consistent positive choices until that point in the future. A five-year term of probation is therefore sufficient but not greater than necessary to deter future criminal conduct.

The Government also recommends a restitution order of $2,971, joint and several. The government further recommends that the Court order the forfeiture of the firearm recovered from Mr. Simon and all recovered cigarettes, cash, and other contraband.[1]

## VI.    CONCLUSION

With full consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a), the Government respectfully recommends a sentence of five years of probation, $2,971, forfeiture of firearm

---

[1] Although certain items were recovered at the conclusion of the final robbery and one prior robbery, those items should be ordered forfeited and are not properly subject to being applied to restitution. Forfeiture does *not* offset restitution. "[C]riminal forfeiture and restitution are separate remedies with different purposes." *United States v. Davis*, 706 F.3d 1081, 1084 (9th Cir. 2013). "Although Defendants must pay both restitution and criminal forfeiture, that result is not an impermissible 'double recovery.'" *United States v. Newman*, 659 F.3d 1235, 1240 (9th Cir. 2011); *Davis*, 706 F.3d at 1084 ("Even if the same government entity will receive both forfeiture and restitution, there simply is no double recovery. The two payments represent different types of funds: punitive and compensatory. They are different in nature, kind, and purpose."). "In the absence of a statute authorizing a reduction in forfeiture, the district court may not reduce forfeiture because of an order of restitution to a victim or because the victim already has been made whole." *Newman*, *supra,* 659 F.3d at 1241; *see also United States v. Davis*, 706 F.3d 1081, 1083-84 (9th Cir. 2013); *United States v Arnold*, 878 F.3d 940, 946 (10th Cir. 2017) ("the statutes mandating restitution and forfeiture do not allow a defendant's payments toward one to offset the amount owed to the other"); *United States v. Alalade*, 204 F.3d 536, 540 (4th Cir. 2000) ("the plain language of the MVRA did not grant the district court discretion to reduce the amount of restitution" by the amount ordered to be forfeited); *United States v. Taylor*, 582 F.3d 558, 566 (5th Cir. 2009) (a district court that had imposed both forfeiture and restitution "properly adhered" to the mandatory language found within the statutory schemes); *United States v. Emerson*, 128 F.3d 557, 566-67 (7th Cir. 1997) (rejecting defendant's request to credit his forfeiture payment towards the restitution amount he owed).

and all recovered cigarettes and cash, and a $200 special assessment.

DATED: June 17, 2026                              Respectfully submitted,

                                                 CRAIG H. MISSAKIAN
                                                 United States Attorney

                                                 _____/s/_____
                                                 EVAN M. MATEER
                                                 Assistant United States Attorney